IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

```
GAIL CRABTREE,                       )
                                     )
                Plaintiff,           )
                                     )
        v.                           )       1:17CV557
                                     )
NANCY A. BERRYHILL,                  )
Acting Commissioner of Social        )
Security,                            )
                                     )
                Defendant.           )
```

**MEMORANDUM OPINION AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE**

Plaintiff, Gail Crabtree, brought this action pursuant to the Social Security Act (the "Act") to obtain judicial review of a final decision of Defendant, the Acting Commissioner of Social Security, denying Plaintiff's claim for Disability Insurance Benefits ("DIB"). (Docket Entry 1.) Defendant has filed the certified administrative record (Docket Entry 7 (cited herein as "Tr. __")), and both parties have moved for judgment (Docket Entries 10, 13; see also Docket Entry 11 (Plaintiff's Memorandum); Docket Entry 14 (Defendant's Memorandum)). For the reasons that follow, the Court should enter judgment for Defendant.

**I. PROCEDURAL HISTORY**

Plaintiff applied for DIB, alleging an onset date of January 1, 2011. (Tr. 199-200.) Upon denial of that application initially (Tr. 77-90, 113-16) and on reconsideration (Tr. 91-105, 117-24), Plaintiff requested a hearing de novo before an Administrative Law

Judge ("ALJ") (Tr. 111-12). Plaintiff, her attorney, and a vocational expert ("VE") attended the hearing. (Tr. 34-76.) The ALJ subsequently ruled that Plaintiff did not qualify as disabled under the Act. (Tr. 17-29.) The Appeals Council thereafter denied Plaintiff's request for review (Tr. 1-6, 14-16, 282-87), making the ALJ's ruling the Commissioner's final decision for purposes of judicial review.

In rendering that disability determination, the ALJ made the following findings later adopted by the Commissioner:

> 1. [Plaintiff] last met the insured status requirements of the . . . Act on December 31, 2014.
>
> 2. [Plaintiff] did not engage in substantial gainful activity from her alleged onset date of January 1, 2011 through her date last insured of December 31, 2014.
>
> . . .
>
> 3. Through the date last insured, [Plaintiff] had the following severe impairments: status post subtotal colectomy and fistula repair, with residual effects of urgency and incontinence; mood disorder; and anxiety disorder.
>
> . . .
>
> 4. Through the date last insured, [Plaintiff] did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.
>
> . . .
>
> 5. . . . [T]hrough the date last insured, [Plaintiff] had the residual functional capacity to perform medium work . . . except limited to occasional climbing of ladders, ropes, or scaffolds; no operation of a motor vehicle at night; and only occasional exposure to extreme

heat. [Plaintiff] is mentally limited to simple, routine, and repetitive tasks.

. . .

6. Through the date last insured, [Plaintiff] was unable to perform any past relevant work.

. . .

10. Through the date last insured, considering [Plaintiff's] age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that [she] could have performed.

. . .

11. [Plaintiff] was not under a disability, as defined in the . . . Act, at any time from January 1, 2011, the alleged onset date, through December 31, 2014, the date last insured.

(Tr. 22-29 (bold font and internal parenthetical citations omitted).)

## II. DISCUSSION

Federal law "authorizes judicial review of the Social Security Commissioner's denial of social security benefits." <u>Hines v. Barnhart</u>, 453 F.3d 559, 561 (4th Cir. 2006). However, "the scope of [the Court's] review of [such a] decision . . . is extremely limited." <u>Frady v. Harris</u>, 646 F.2d 143, 144 (4th Cir. 1981). Plaintiff has not established entitlement to relief under the extremely limited review standard.

### A. Standard of Review

"[C]ourts are not to try [a Social Security] case de novo." <u>Oppenheim v. Finch</u>, 495 F.2d 396, 397 (4th Cir. 1974). Instead,

the Court "must uphold the factual findings of the ALJ if they are supported by substantial evidence and were reached through application of the correct legal standard." Hines, 453 F.3d at 561 (internal brackets and quotation marks omitted). "Substantial evidence means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1992) (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)). "It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001) (brackets and internal quotation marks omitted). "If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is substantial evidence." Hunter, 993 F.2d at 34 (internal quotation marks omitted).

"In reviewing for substantial evidence, the [C]ourt should not undertake to re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the [ALJ, as adopted by the Commissioner]." Mastro, 270 F.3d at 176 (internal brackets and quotation marks omitted). "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the [Commissioner] (or the ALJ)." Id. at 179 (internal quotation marks omitted). "The issue before [the Court], therefore, is not whether [the claimant] is disabled, but whether the ALJ's finding that [the

4

claimant] is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996).

When confronting that issue, the Court must take note that "[a] claimant for disability benefits bears the burden of proving a disability," Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981), and that, in this context, "disability" means the "'inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months,'" id. (quoting 42 U.S.C. § 423(d)(1)(A)).[1]  "To regularize the adjudicative process, the Social Security Administration has . . . detailed regulations incorporating longstanding medical-vocational evaluation policies that take into account a claimant's age, education, and work experience in addition to [the claimant's] medical condition."  Id.  "These regulations establish a 'sequential evaluation process' to determine whether a claimant is disabled."  Id.

---

[1] The Act "comprises two disability benefits programs. [DIB] . . . provides benefits to disabled persons who have contributed to the program while employed. The Supplemental Security Income Program . . . provides benefits to indigent disabled persons. The statutory definitions and the regulations . . . for determining disability governing these two programs are, in all aspects relevant here, substantively identical." Craig, 76 F.3d at 589 n.1 (internal citations omitted).

5

This sequential evaluation process ("SEP") has up to five steps: "The claimant (1) must not be engaged in 'substantial gainful activity,' *i.e.*, currently working; and (2) must have a 'severe' impairment that (3) meets or exceeds the 'listings' of specified impairments, or is otherwise incapacitating to the extent that the claimant does not possess the residual functional capacity to (4) perform [the claimant's] past work or (5) any other work." Albright v. Commissioner of the Soc. Sec. Admin., 174 F.3d 473, 475 n.2 (4th Cir. 1999).[2] A finding adverse to the claimant at any of several points in the SEP forecloses an award and ends the inquiry. For example, "[t]he first step determines whether the claimant is engaged in 'substantial gainful activity.' If the claimant is working, benefits are denied. The second step determines if the claimant is 'severely' disabled. If not, benefits are denied." Bennett v. Sullivan, 917 F.2d 157, 159 (4th Cir. 1990).

On the other hand, if a claimant carries his or her burden at each of the first three steps, "the claimant is disabled." Mastro, 270 F.3d at 177. Alternatively, if a claimant clears steps one and two, but falters at step three, i.e., "[i]f a claimant's impairment is not sufficiently severe to equal or exceed a listed impairment, the ALJ must assess the claimant's residual functional capacity

---

[2] "Through the fourth step, the burden of production and proof is on the claimant. If the claimant reaches step five, the burden shifts to the [Commissioner] . . . ." Hunter, 993 F.2d at 35 (internal citations omitted).

6

('RFC')." Id. at 179.[3] Step four then requires the ALJ to assess whether, based on that RFC, the claimant can perform past relevant work; if so, the claimant does not qualify as disabled. See id. at 179-80. However, if the claimant establishes an inability to return to prior work, the analysis proceeds to the fifth step, whereupon the ALJ must decide "whether the claimant is able to perform other work considering both [the claimant's RFC] and [the claimant's] vocational capabilities (age, education, and past work experience) to adjust to a new job." Hall, 658 F.2d at 264-65. If, at this step, the Commissioner cannot carry its "evidentiary burden of proving that [the claimant] remains able to work other jobs available in the community," the claimant qualifies as disabled. Hines, 453 F.3d at 567.[4]

---

[3] "RFC is a measurement of the most a claimant can do despite [the claimant's] limitations." Hines, 453 F.3d at 562 (noting that administrative regulations require RFC to reflect claimant's "ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis . . . [which] means 8 hours a day, for 5 days a week, or an equivalent work schedule" (internal emphasis and quotation marks omitted)). The RFC includes both a "physical exertional or strength limitation" that assesses the claimant's "ability to do sedentary, light, medium, heavy, or very heavy work," as well as "nonexertional limitations (mental, sensory, or skin impairments)." Hall, 658 F.2d at 265. "RFC is to be determined by the ALJ only after [the ALJ] considers all relevant evidence of a claimant's impairments and any related symptoms (e.g., pain)." Hines, 453 F.3d at 562-63.

[4] A claimant thus can establish disability via two paths through the SEP. The first path requires resolution of the questions at steps one, two, and three in the claimant's favor, whereas, on the second path, the claimant must prevail at steps one, two, four, and five. Some short-hand judicial characterizations of the SEP appear to gloss over the fact that an adverse finding against a claimant on step three does not terminate the analysis. See, e.g., Hunter, 993 F.2d at 35 ("If the ALJ finds that a claimant has not satisfied any step of the process, review does not proceed to the next step.").

## **B. Assignments of Error**

Plaintiff argues that the Court should overturn the ALJ's finding of no disability on these grounds:

1) "[t]he ALJ's decision violates [Mascio v. Colvin, 780 F.3d 630 (4th Cir. 2015),]" by failing to adequately account for Plaintiff's moderate limitation in concentration, persistence, or pace ("CPP") in the RFC (Docket Entry 11 at 4 (bold font omitted)); and

2) "[t]he ALJ erred by failing to account for Plaintiff's urgency and incontinence status post colectomy and fistula repair in the RFC" (id. at 5 (bold font omitted)).

Defendant contends otherwise and seeks affirmance of the ALJ's decision. (Docket Entry 14 at 3-11.)

### **1. CPP**

In Plaintiff's first issue on review, she contends that "the ALJ found that [Plaintiff] suffered from moderate limitations in [CPP,] noting in support that '[b]oth the consultative examination report and [Plaintiff's] treating notes indicate that [Plaintiff] has moderate difficulties with concentration and memory'" (Docket Entry 11 at 4 (quoting Tr. 23)), but that, "when assessing the RFC, the ALJ only noted that mentally, [Plaintiff] was limited to 'simple, routine, and repetitive tasks' [("SRRTs")] (id. (quoting Tr. 24)). According to Plaintiff, the United States Court of Appeals for the Fourth Circuit "rejected th[e ALJ's] approach" by

8

holding that "'the ability to perform simple tasks differs from the ability to stay on task[, and that o]nly the latter limitation would account for a claimant's limitation in [CPP].'" (Id. (quoting Mascio, 780 F.3d at 638 (internal citations omitted)).) Plaintiff deems the ALJ's error in that regard "particularly harmful given that the only hypothetical referring to time off task proffered to the [VE] returned a response that if [Plaintiff] was off task more than 10 percent of the workday, competitive work would be precluded." (Id. at 5 (citing Tr. 74).) Plaintiff's contentions miss the mark.

The Fourth Circuit has indeed held that "the ability to perform simple tasks differs from the ability to stay on task" and that "[o]nly the latter limitation would account for a claimant's limitation in [CPP]." Mascio, 780 F.3d at 638. However, as a neighboring district court has explained:

> Mascio does not broadly dictate that a claimant's moderate impairment in [CPP] always translates into a limitation in the RFC. Rather, Mascio underscores the ALJ's duty to adequately review the evidence and explain the decision . . . . An ALJ may account for a claimant's limitation with [CPP] by restricting the claimant to simple, routine, unskilled work where the record supports this conclusion, either through physician testimony, medical source statements, consultative examinations, or other evidence that is sufficiently evident to the reviewing court.

Jones v. Colvin, No. 7:14CV00273, 2015 WL 5056784, at *10-12 (W.D. Va. Aug. 20, 2015) (magistrate judge's recommendation adopted by district judge) (unpublished) (emphasis added). Here, the ALJ's

9

decision sufficiently explains why the restrictions in the RFC to SRRTs (see Tr. 24) adequately accounted for Plaintiff's moderate limitation in CPP.

First, the ALJ summarized Plaintiff's mental health treatment (see Tr. 26), making the following, pertinent observations:

- The record reflects that Plaintiff did not seek any mental health treatment between "the winter of 2005-06, and [June 6,] 2013" (id.; see also Tr. 326-33, 430-35, 467-94);

- "Treatment notes from 2014 and 2015 indicate that [Plaintiff] was responding to therapy and medication and showing some improvement" (id.; see also Tr. 454, 467-80);

- Plaintiff "report[ed] successful trips to the mountains, the beach, and New Orleans (id.; see also Tr. 469, 470, 474, 476, 477, 479, 484);

- Plaintiff "had found a sense of community and felt productive in volunteering at an animal shelter" (id.; see also Tr. 467, 468).

Plaintiff does not challenge the ALJ's summarization of Plaintiff's mental health treatment history. (See Docket Entry 11.)

Second, the ALJ discussed Plaintiff's testimony regarding her mental symptoms (see Tr. 25), but concluded that Plaintiff's "statements concerning the intensity, persistence and limiting effects of [her] symptoms [we]re not entirely consistent with the medical evidence and other evidence in the record" (id.). Plaintiff does not challenge the ALJ's evaluation of Plaintiff's subjective complaints. (See Docket Entry 11.)

Third, the ALJ also discussed and weighed the opinion evidence as it related to Plaintiff's ability to function mentally. (See Tr. 26-27.) Most notably, the ALJ gave "significant weight" to the opinions of the state agency psychological consultants (Tr. 26), who each concluded that, despite moderate deficit in CPP (see Tr. 82, 97), Plaintiff remained capable of "SRRTs at least" (Tr. 83, 97), and "ab[le] to carry out or maintain concentration long enough to complete a simple task as would be required of unskilled work" (Tr. 86, 101).

Those three elements of the ALJ's decision adequately supported the conclusion that, despite moderate limitation in CPP, Plaintiff remained capable of performing SRRTs. See Sizemore v. Berryhill, __ F. App'x __, __, 2017 WL 467712, at *6 (4th Cir. Oct. 17, 2017) (rejecting the plaintiff's argument under Mascio where ALJ relied on opinions of consultative examiner and state agency psychologist that, notwithstanding moderate deficit in CPP, the plaintiff could sustain attention sufficiently to perform SRRTs).

In sum, Plaintiff's first assignment of error fails as a matter of law.

### 2. Urgency and Incontinence

Lastly, Plaintiff asserts that "[t]he ALJ erred by failing to account for Plaintiff's urgency and incontinence status post colectomy and fistula repair in the RFC." (Docket Entry 11 at 5 (bold font omitted).) In particular, Plaintiff maintains that,

11

although the ALJ found that Plaintiff's "status post subtotal colectomy and fistula repair with residual effects of urgency and incontinence" qualified as a severe impairment at step 2 of the SEP (Tr. 22), the ALJ erred by failing to "include any limitations regarding Plaintiff's increased need to use the restroom or change her clothes during the workday" in the RFC. (Docket Entry 11 at 7.) In addition, Plaintiff asserts that the ALJ's error in that regard prejudiced her, because the VE testified that the need to use the restroom three to 10 times on an unscheduled basis during a workday would preclude competitive employment (id. (citing Tr. 74)), and further opined that even a need for two restroom breaks beyond regularly scheduled breaks would preclude such employment (id. at 8 (citing Tr. 75)). Plaintiff has not established entitlement to relief.

As an initial matter, the Court should reject Plaintiff's suggestion that the ALJ's finding at step two that the residual effects of Plaintiff's colectomy and fistula repair qualified as a severe impairment required the ALJ to include restrictions related to that impairment when formulating the RFC (see Docket Entry 11 at 7):

> The determination of a "severe" impairment at step two of the sequential evaluation process is a de minimis test, designed to weed out unmeritorious claims. See Bowen v. Yuckert, 482 U.S. 137 (1987). A finding of de minimis limitations is not proof that the same limitations have the greater significant and specific nature required to gain their inclusion in an RFC assessment at step four.

12

> See, e.g., Sykes v. Apfel, 228 F.3d 259, 268 n.12 (3d Cir. 2000).

Hughes v. Astrue, No. 1:09CV459, 2011 WL 4459097, at *10 (W.D.N.C. Sept. 26, 2011) (unpublished); accord Burkstrand v. Astrue, 346 F. App'x 177, 180 (9th Cir. 2009) ("To the extent [a claimant] suggests that a finding of severe impairment at [s]tep 2 necessarily requires limitations on a claimant's ability to perform basic work activities, this argument has no merit."); Goodwin v. Colvin, No. 2:14-cv-11582, 2015 WL 1181392, at *26 (S.D.W. Va. Mar. 13, 2015) (unpublished) (describing as "fundamentally flawed" the plaintiff's argument that, because the ALJ found a severe impairment at step two, "she was bound to include functional limitations in the RFC finding to account for [the impairment]"); Perez v. Colvin, No. 3:13-CV-868 (JCH), 2014 WL 4852848, at *19 (D. Conn. Sept. 29, 2014) (unpublished) (holding ALJ "not required to assess additional limitations for each [severe] impairment"); Chappell v. Colvin, No. 1:10CV384, 2014 WL 509150, at *4 (M.D.N.C. Feb. 7, 2014) (unpublished) (Peake, M.J.) (ruling that ALJ need not "separately include limitations from each of [the plaintiff's] step two severe impairments when assessing [the] RFC"), recommendation adopted, slip op. (M.D.N.C. Mar. 31, 2014) (Osteen, Jr., C.J.); Burns v. Astrue, No. 2:11-cv-151-GZS, 2012 WL 313705, at * (D. Me. Jan. 30, 2012) (unpublished) (noting that "a finding of a severe impairment need not always result in limitations in an RFC"), recommendation adopted, No. 2:11-CV-151-GZS, 2012 WL 567254 (D. Me.

13

Feb. 21, 2012) (unpublished); see also Felton-Miller v. Astrue, 459 F. App'x 226, 230 (4th Cir. 2001) ("Step two of the sequential evaluation is a threshold question with a de minimis severity requirement.").

Moreover, contrary to Plaintiff's argument (see Docket Entry 11 at 5-11), the ALJ sufficiently explained the basis for the RFC determination (see Tr. 24-27). First, the ALJ evaluated Plaintiff's subjective complaints, including her reports that she needed to use the restroom five to seven times before she left the house in the morning and two to three times per hour after that, needed to quickly find a restroom after a meal, experienced discomfort from cramping, and suffered incontinence with sneezing, lifting/carrying, or a dog pulling on a leash. (See Tr. 25; see also Tr. 49, 53, 64, 68.) However, the ALJ ultimately found that her "statements concerning the intensity, persistence and limiting effects of [her] symptoms [we]re not entirely consistent with the medical evidence and other evidence in the record" (Tr. 25). The ALJ supported his analysis of Plaintiff's subjective complaints with substantial evidence, including a discussion of Plaintiff's daily activities, such as cooking, cleaning, light gardening, caring for her dog, using her computer, reading, grocery shopping, volunteering at the animal shelter, and taking successful trips to the mountains, the beach, and New Orleans. (See Tr. 25, 26.)

14

Plaintiff takes issue with the ALJ's observation that Plaintiff's gastroenterologist, Dr. John Perry, noted on July 8, 2013, that Plaintiff's "diarrheal symptoms improved with Imodium and fiber, and 'can be controlled with medications,' although this will cause her to develop some abdominal discomfort." (Docket Entry 11 at 8 (citing Tr. 25 (in turn citing Tr. 438))).) According to Plaintiff, she cannot "sustain th[o]se medications," because, although they "could stop the diarrhea, it did not result in tolerable [bowel movements] but rather her suffering significant cramping pain in her abdomen and prolonged constipation." (Id. (citing Tr. 53, and Social Security Ruling 16-3p, Titles II and XVI: Evaluation of Symptoms in Disability Claims, 2017 WL 5180304, at *10 (Oct. 25, 2017) ("SSR 16-3p") (providing that "[a]n individual may not agree to take prescription medications because the side effects are less tolerable than the symptoms").)

To the extent Plaintiff argues that the ALJ's analysis of Plaintiff's subjective complaints violated SSR 16-3p, that argument fails. SSR 16-3p provides as follows:

> [I]f the frequency or extent of the treatment sought by an individual is not comparable with the degree of the individual's subjective complaints, or if the individual fails to follow prescribed treatment that might improve symptoms, [the ALJ] may find the alleged intensity and persistence of an individual's symptoms are inconsistent with the overall evidence of record. <u>[The ALJ] will not find an individual's symptoms inconsistent with the evidence in the record on this basis without considering possible reasons he or she may not comply with treatment or seek treatment consistent with the degree of his or her complaints</u>. [The ALJ] may need to contact the

15

> individual regarding the lack of treatment or, at an administrative proceeding, ask why he or she has not complied with or sought treatment in a manner consistent with his or her complaints. When [the ALJ] consider[s] the individual's treatment history, [the ALJ] may consider (but [is] not limited to) one or more of the following:
>
> . . .
>
> · An individual may not agree to take prescription medications because the side effects are less tolerable than the symptoms.

SSR 16-3p, 2017 WL 5180304, at *9-10 (emphasis added).

Here, however, the ALJ did not find Plaintiff's statements about the intensity of her symptoms not fully consistent with the record because she failed to <u>seek treatment</u> or <u>follow prescribed treatment</u>. (<u>See</u> Tr. 24-27.) Rather, the ALJ simply credited the observations of Plaintiff's treating providers that medications such as Imodium, fiber, and Questran (the latter of which Plaintiff testified that she continued to take as of the date of the hearing (<u>see</u> Tr. 53)) controlled Plaintiff's symptoms, albeit with some accompanying constipation and abdominal discomfort. (<u>See</u> Tr. 25; <u>see also</u> Tr. 438, 454.) Although Plaintiff may disagree with the ALJ's analysis of Plaintiff's subjective complaints, such determinations are "'emphatically the province of the ALJ, not the court.'" <u>Vest v. Colvin</u>, No. 5:13CV00067, 2014 WL 4656207, at *2 (W.D. Va. Sept. 16, 2014) (unpublished) (citing <u>Dunn v. Colvin</u>, 973 F. Supp. 2d 630, 649 (W.D. Va. 2013)). So long as the record provides substantial evidence to support the ALJ's analysis, and

the ALJ complies with applicable law, as he did here, the reviewing court should not disturb those findings.

Second, the ALJ accorded "significant weight" to the state agency physicians' opinions that, despite Plaintiff's gastrointestinal symptoms, Plaintiff remained capable of performing a full range of medium work <u>without any additional non-exertional limitations</u>. (Tr. 26; <u>see also</u> Tr. 84, 99.) Moreover, Plaintiff did not challenge the ALJ's evaluation of the state agency physicians' opinions. (<u>See</u> Docket Entry 11.)

Third, the ALJ discussed consultative examiner Dr. Alan A. Rosenbloom's opinion that Plaintiff's "condition d[id] not appear to affect her ability to sit, stand, move about, lift, carry, handle objects, hear, or speak" (Tr. 26 (citing Tr. 428)), and gave that opinion "significant weight" (id.).[5] Again, Plaintiff failed to allege error with respect to the ALJ's evaluation of Dr. Rosenbloom's opinions. (<u>See</u> Docket Entry 11.)

---

[5] Dr. Rosenbloom also opined that traveling could pose problems for Plaintiff, because, "if she develop[ed] any fecal urgency and [could] not get to a rest room rapidly, she w[ould] soil herself." (Tr. 428.) The ALJ did not expressly discuss that opinion (<u>see</u> Tr. 26-27), but any such failure, if error at all, remains harmless, as two of the jobs cited by the VE (<u>see</u> Tr. 72) (and adopted by the ALJ at step five of the SEP (<u>see</u> Tr. 28)) do not list travel among their duties, <u>see</u> <u>Dictionary of Occupational Titles</u>, No. 920.587-018 (Packager, Hand), 1991 WL 687916 (4th ed. rev. 1991) ("<u>DOT</u>"), <u>DOT</u>, No. 361.685-018 (Laundry Worker II), 1991 WL 672987, and the remaining job describes only intermittent local travel to retrieve items from storage, <u>see</u> <u>DOT</u>, No. 922.687-058 (Laborer, Stores), 1991 WL 688132. Moreover, even if the store laborer job's requirement of local intermittent travel precluded that job, the VE testified that 165,000 hand packager jobs and 377,000 laundry worker jobs existed in the national economy (<u>see</u> Tr. 72), amounts that clearly qualify as significant under Fourth Circuit authority, <u>see</u> <u>Hicks v. Califano</u>, 600 F.2d 1048, 1051 (4th Cir. 1979) ("Claimant contends that the light and sedentary jobs described by the [VE] . . . do not exist in significant numbers within the region. We do not think that the approximately 110 jobs testified to by the [VE] constitute an insignificant number.").

17

In short, Plaintiff has not shown error with respect to the ALJ's failure to include in the RFC limitations beyond medium work, occasional ladders, ropes, and scaffolds, and occasional exposure to extreme heat to accommodate Plaintiff's gastrointestinal symptoms and, thus, Plaintiff's second issue on review does not entitle her to relief.

### III.  CONCLUSION

Plaintiff has not established an error warranting relief.

**IT IS THEREFORE RECOMMENDED** that the Commissioner's decision finding no disability be affirmed, that Plaintiff's Motion for Judgment on the Pleadings (Docket Entry 10) be denied, that Defendant's Motion for Judgment on the Pleadings (Docket Entry 13) be granted, and that this action be dismissed with prejudice.

/s/ L. Patrick Auld
**L. Patrick Auld**
**United States Magistrate Judge**

April 13, 2018